# District of Columbia
# Court of Appeals

**No. 17-FS-1106**

IN RE K.G.,

      Appellant.        **DEL440-17**



FILED

FEB. 15, 2018

DISTRICT OF COLUMBIA
COURT OF APPEALS

Before BECKWITH and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

**O R D E R**

On further consideration of the court's October 8, 2017, judgment that reversed the trial court order detaining appellant, remanded the case for further proceedings, and stated that an opinion would follow and it appearing that the mandate previously issued, it is

ORDERED, *sua sponte*, that the Clerk shall recall the mandate and issue the attached opinion explaining the court's October 8, 2017, judgment.

**PER CURIAM**

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-FS-1106

IN RE K.G., APPELLANT.

FILED 02/15/2018
District of Columbia
Court of Appeals
Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DEL-440-17)

(Hon. Jennifer M. Anderson, Trial Judge)

(Argued October 7, 2017                    Decided February 15, 2018)

*Terrence Austin*, Public Defender Service, with whom *Samia Fam*, *Jaclyn S. Frankfurt*, and *Stefanie Schneider*, Public Defender Service, were on the brief for appellant.

*John W. Donovan*, Assistant Attorney General, with whom *Karl Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General at the time the brief was filed, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief for appellee.

Before BECKWITH and EASTERLY, *Associate Judges*, and RUIZ, *Senior Judge*.

EASTERLY, *Associate Judge*:  Under our juvenile delinquency system, the District of Columbia recognizes that children, because of their cognitive and emotional immaturity, should not be treated like adults.  This differentiation

applies across the board to all decisions made in the life of a juvenile delinquency case, including a detention decision under D.C. Code §§ 16-2310 and -2312 (2017 Supp.), the subjects of this opinion.[1]  Under D.C. Code § 16-2310, the default prior to final disposition is not to detain children alleged or even proven to have committed delinquent acts.  Instead, the statute favors keeping children with their families and communities as they receive beneficial rehabilitative services.  Recent amendments to the detention statute have only reinforced that detention is a last resort, authorized only (1) if, after an assessment of the individual child and the particular circumstances, the trial court concludes detention is either required "to protect the person or property of others from significant harm" or necessary "to secure the child's presence" in court, or (2) as a narrow exception to (1), if a child alleged to have committed a "dangerous crime"—limited to specified gun crimes—fails to demonstrate detention is not warranted.  D.C. Code § 16-2310 (a).

In this case, the information presented to the trial court—the fact of K.G.'s new arrest for commission of another drug offense while his juvenile case was pending and his failure to comply with some conditions of his release—was legally

---

[1]  In the context of Title 16, "detention" is defined as "the temporary, secure custody of a child in facilities, designated by the Division, pending a final disposition of a petition," and does not encompass placement in other types of facilities, such as shelter care.  D.C. Code § 16-2301 (13) (2017 Supp.).

insufficient to sustain the trial court's determination that the detention of K.G. was "required to protect the person or property of others from significant harm." D.C. Code § 16-2310 (a)(1). K.G. took an interlocutory appeal pursuant to D.C. Code § 16-2328 (2013 Repl.), and this court issued an order, within the requisite statutory timeframe, see *infra* note 33, reversing the trial court's decision. *See* Appendix. We now explain our reasoning.

## I.      Facts and Procedural History

On April 22, 2017, the District charged K.G., then seventeen, with one count of possession of a controlled substance (cocaine) with intent to distribute, and one count of possession of a controlled substance (cocaine).[2] K.G. initially remained in his grandmother's care but was later placed in shelter care, i.e., a physically unrestricted facility, D.C. Code § 16-2301 (14) (defining shelter care).[3] After entering a plea of involvement to one count of possession of cocaine, K.G. was returned to the custody of his grandmother, pending disposition.

---

[2] D.C. Code § 48-904.01 (a)(1) (2013 Repl.).

[3] The record does not reflect the reason for this placement.

K.G. returned to court on October 3 for his dispositional hearing, but his hearing did not go forward. Instead, K.G.'s probation officer reported to the trial court that K.G. had been arrested on August 30, 2017, and, because he was now eighteen, had been charged as an adult with two counts of distribution of a controlled substance (cocaine) and one count of possession of a controlled substance (cocaine) with intent to distribute.[4] The trial court in the adult case had released K.G. to the community, where he had apparently resided without further incident. But now, almost five weeks later, the Office of the Attorney General (OAG), litigating this case on behalf of the District government, asked the trial court in his juvenile case to remove K.G. from the community and place him at the Youth Services Center (YSC), a secured facility.[5]

Counsel for K.G. opposed the government's request and argued that detention was not justified under the juvenile detention statute as recently revised. Counsel emphasized that there was "no indication that [K.G.] was armed, or used any weapons, or harmed anyone physically." Counsel represented that K.G. had "been responding to his supervision" in the adult case and had been attending

---

[4] See *supra* note 2.

[5] K.G. remained a "child" for purposes of this case because it concerned a delinquent act committed before he turned eighteen. D.C. Code § 16-2301 (3).

school, and argued that if the trial court were concerned about K.G., "[s]helter [h]ouse placement would be the least restrictive alternative appropriate" under the circumstances.

The trial court granted the OAG's detention request. As the basis for its decision, the court relied on D.C. Code § 16-2310 (a)(1) (authorizing detention "prior to a factfinding hearing or a dispositional hearing" if it is "required to protect the person or property of others from significant harm") and determined that K.G. was "a significant danger to others." The court's reasoning for this determination was twofold.

The court first focused on the nature of K.G.'s new adult charges, specifically the fact that "there's been probable cause to believe that [K.G. is] selling cocaine, which is . . . dangerous." The court noted that "the City Council believes [distribution of cocaine is] a dangerous crime; and so, I do think it's . . . significant risk of harm to others – I mean, cocaine is dangerous and . . . that's

what the statute[6] says." The court further observed that "to me selling drugs is . . . dangerous . . . . [I]t does have the risk of substantial harm."

The court also focused on K.G.'s recidivism and general noncompliance with supervision. The court expressed concern that "people can't supervis[e] [K.G.]," as evidenced by his new arrest for charges similar to those that had initiated his juvenile case. The court also noted K.G.'s noncompliance with his curfew, his failure to enroll in drug treatment, and his failure to complete computer training.[7] The court agreed that, by themselves, K.G.'s technical violations did not warrant detention (although, the court noted, they would justify K.G.'s placement in a shelter house). But the court stated, "when you look at the whole combination," along with his prior history on release and his new adult charges, "I do believe he's a danger to the community."

To memorialize its decision, the court issued a standardized form "Order for Detention Pending Further Division Action." The court checked two boxes on the

---

[6] The trial court seemingly was referring to the adult detention statute, D.C. Code § 23-1331 (3) (2013 Repl.) (defining "dangerous crimes" "[a]s used in this subchapter").

[7] The court later noted that K.G. had tested positive for cocaine at his lock up test on the adult charges. K.G. had also tested positive for illegal drugs earlier in the life of the juvenile case.

form indicating that it had determined that detention was required "to protect the person of others . . . based on . . . the nature and circumstances of the pending charge" and "to protect the respondent's own person."[8] After the issuance of the court's order, counsel filed both a notice of appeal pursuant to D.C. Code § 16-2328 (a), which requires a juvenile to note an appeal from a detention order within two days, and a motion for reconsideration.[9] The trial court denied the motion for reconsideration after the parties filed pleadings with this court but before this court heard oral argument.[10]

---

[8] As explained below, neither of these reasons is an authorized basis for detention set forth in D.C. Code § 16-2310. See *infra* II.A.

[9] In making its detention decision, the trial court invited defense counsel to file a motion to reconsider to present any additional authority that would clarify the new juvenile detention statute's meaning, acknowledging that "these are all kind of uncharted areas."

[10] We appreciate the trial court's quick issuance of its order denying reconsideration to assist us in understanding its reasoning. While technically not part of our record on appeal, the trial court's order made clear that (1) it had not applied the presumption in favor of detention under D.C. Code § 16-2310 (a-1), which it acknowledged was inapplicable to K.G.; (2) its detention decision was not based solely on its determination that distribution of cocaine, his newly charged offense, is a dangerous crime; and (3) it reached the decision "that detention is required to protect the person or property of others from significant harm" pursuant to D.C. Code § 16-2310 (a)(1) based on its assessment of "all the circumstances of this case."

## II.     The Detention Decision

## A. The Evolution of the Juvenile Detention Statute

By creating a juvenile justice system distinct from the adult criminal justice system, Congress communicated its objective to treat children who are alleged to have committed crimes differently from their adult counterparts. With the passage of D.C. Code § 16-2301.02, the Council of the District of Columbia subsequently memorialized its "purpose . . . to create a juvenile justice system . . . *that will treat children as children in all phases of their involvement*, while protecting the needs of communities and victims alike." (emphasis added). This "purpose" provision sets forth a number of "goals . . . for delinquency cases," which, in addition to reaffirming a commitment to due process protections,[11] convey a desire to support children in the community, to support their families, and to pursue rehabilitation, not punishment, "with the goal of creating productive citizens."[12] Section 16-

---

[11] *See* D.C. Code § 16-2301.02 (1) (goal "[t]o provide due process through which juveniles and all other interested parties are assured fair hearings, during which applicable constitutional and other legal rights are recognized and enforced").

[12] *See* D.C. Code § 16-2301.02 (2) (goal "[t]o promote youth development and prevent delinquency through early intervention, diversion, and community-based alternatives"); § 16-2301.02 (3) (goal "[t]o preserve and strengthen families whenever possible . . . ."); § 16-2301.02 (5) (goal "[t]o place a premium on the rehabilitation of children with the goal of creating productive citizens and to recognize that rehabilitation of children is inextricably connected to the well-being

(continued ....)

2301.02 also establishes goals of holding "child[ren] found to be delinquent accountable for [their] actions, taking into consideration the child[ren]'s age, education, mental and physical condition, background, and all other relevant factors"[13] and "provid[ing] for the safety of the public."[14] Lastly, the statute seeks to "achieve the foregoing goals in the least restrictive settings necessary, with a preference *at all times* for the preservation of the family and the integration of parental, guardian, or custodial accountability and participation in treatment and counseling programs."[15]

Because the goals of § 16-2301.02 apply to "all phases" of a juvenile delinquency case, other statutory provisions addressing juvenile detention before a factfinding hearing or a dispositional hearing—D.C. Code § 16-2310 (setting forth the criteria for detaining children alleged to be delinquent) and D.C. Code § 16-2312 (setting forth the procedures for detaining children alleged to be

---

(....continued)
and strength of their families"); § 16-2301.02 (6) (goal "[t]o serve children in their own neighborhood and communities whenever possible"); § 16-2301.02 (7) (goal "[t]o hold the government accountable for the provision of reasonable rehabilitative services").

[13] D.C. Code § 16-2301.02 (4).

[14] D.C. Code § 16-2301.02 (8).

[15] D.C. Code § 16-2301.02 (9) (emphasis added).

delinquent)—must be read and applied with the purpose and goals of § 16-2301.02 in mind.

Section 16-2310 recognizes a default rule that children alleged to be delinquent should not be detained before final disposition of their juvenile case. It provides that "[a] child [alleged to be delinquent] shall not be placed in detention prior to a factfinding hearing[16] or a dispositional hearing[17] . . . unless it appears from available information that detention is required" either "(1) to protect the person or property of others from significant harm, or (2) to secure the child's presence at the next court hearing." D.C. Code § 16-2310 (a). The default against placing a child alleged to be delinquent in detention prior to a dispositional hearing is subject to a limited exception under § 16-2310 (a-1)(1) which creates "a rebuttable presumption that detention is required to protect the person or property of others if the judicial officer finds by a substantial probability that the child" either "(A) Committed a dangerous crime or a crime of violence while armed with or having readily available a pistol, firearm, or imitation firearm" or "(B)

---

[16] D.C. Code § 16-2301 (16) (defining a "factfinding hearing" as "a hearing to determine whether the allegations of a petition are true").

[17] D.C. Code § 16-2301 (17) (defining a "dispositional hearing" in relevant part as "a hearing, after a finding of fact, to determine [ ] whether the child in a delinquency or need of supervision case is in need of care or rehabilitation and, if so, what order of disposition should be made").

Committed CPWL, carrying a pistol without a license." Notably, § 16-2310 (a-1) employs the definitions of "dangerous crime" and "crime of violence" in the adult detention statute[18] but carves out a number of offenses, including "[a]ny felony offense under Chapter 9 of Title 48 (Controlled Substances)." D.C. Code § 16-2310 (a-1)(2)(B).

Current restrictions on the placement of juveniles in detention prior to a delinquency disposition are the product of successive amendments to § 16-2310 that promote keeping children in the community and out of a jail-like setting.[19] With the passage of the Comprehensive Youth Justice Amendment Act of 2016 (CYJAA),[20] language in § 16-2310 (a)(1) that had permitted detention of a child alleged to be delinquent "to protect the person or property . . . of the child" was deleted, in recognition that placing a child in a jail-like setting for his own protection was inappropriate and potentially dangerous.[21] Additionally, the

---

[18] D.C. Code § 23-1331.

[19] We highlight, however, that neither the standardized form order used by the trial court nor the juvenile court rules reflect the amendments to the juvenile detention statute. See *supra* note 8. Both are in need of updating.

[20] D.C. Law 21-238, 64 D.C. Reg. 3959 (effective Apr. 4, 2017).

[21] D.C. Council, Report on Bill 21-0683 at 9 (Oct. 5, 2016) (explaining that "[p]otential victims of crime should not be securely detained against their will, particularly when there is a risk of harm within the secure facility," and that

(continued ....)

provision in § 16-2310 (a)(1) that had permitted detention of a child alleged to be delinquent if "required to protect the person or property of others" was further constricted to compel a showing that detention was required to protect the person or property of others *from significant harm*." (emphasis added).[22]

Similarly, the 2007 amendment of the detention statute that created the presumption in favor of detention if there is a substantial probability that a child committed an offense involving a firearm, *see* D.C. Code § 16-2310 (a-1),[23] also signaled a desire to minimize juvenile detention pre-disposition. The Council could have replicated the analogous provision for adult detention decisions, which creates a rebuttable presumption authorizing detention in a broader array of circumstances, including when an adult has committed a felony drug crime while on release in another case. *Compare* D.C. Code § 16-2310 (a-1) *with* D.C. Code § 23-1322 (c) (2017 Supp.). And indeed the Council did just that in emergency

---

 (....continued)
"where there is a risk that a child may harm [him]sel[f], medical intervention is the appropriate response, as secure detention may in fact exacerbate the problem").

[22]  The CYJAA also deleted language in D.C. Code § 16-2310 (a) that had authorized pre-disposition detention of juveniles who were alleged to be "in need of supervision," but, to date, that amendment appears not be effective. D.C. Law 21-238 § 701 (a).

[23]  D.C. Law 16-308 § 2, 54 D.C. Reg. 942 (effective May 5, 2007).

legislation that was in effect for three months in 2006.[24] But the Council ultimately did not make the provisions of the emergency legislation permanent. Instead, the Council opted for the much more restrictive presumption limited to crimes involving firearms, and in all other cases it continued to require a showing that the criteria for detention under § 16-2310 (a) were satisfied.[25] See *supra* note 23.

These revisions to the juvenile detention statute are in keeping with and were in part inspired by "[r]ecent research . . . on the development of the brain during adolescence," which indicates that detaining children for poor decisionmaking to punish or educate them is simply ineffective and may be counterproductive. Council Comm. on the Judiciary, Report on Bill 21-0683, at 3

---

[24] *See* Enhanced Crime Prevention and Abatement Emergency Amendment Act of 2006, D.C. Act 16-446, 53 D.C. Reg. 6477 (effective July 21, 2006, exp. Oct. 19, 2006). The presumption in favor of detention under this emergency legislation effectively adopted for juveniles the presumption in favor of detention for adults under D.C. Code §§ 23-1322 (c)(1), (3)-(7). *See* 53 D.C. Reg. 6477 § 302 (effective Jul. 21, 2006, exp. Oct. 19, 2006).

[25] *See* D.C. Council Comm. on the Judiciary, Report on Bill 16-895 at 2 (Nov. 20, 2006) (observing that creation of a rebuttable presumption of detention for certain offenses "express[es] a policy statement by the Council that certain criminal activity is extremely dangerous . . . and will not be condoned," nevertheless acknowledging "the focus of juvenile court is rehabilitation," and— for that reason and in contrast to the rebuttable presumption of detention for adults and the emergency legislation passed earlier in the year—limiting the rebuttable presumption of detention for juveniles to "crimes involving firearms").

(Oct. 5, 2016). As the Committee on the Judiciary acknowledged in its 2016 Report,

> research has demonstrated that the frontal lobes of the brain, which control executive functions like "planning, working memory, and impulse control" are one of the last areas of the brain to develop and may not be fully developed until the mid-twenties . . . . As a result adolescents have a more difficult time grasping long-term consequences and are more likely to have impaired judgment—both of which are factors in determining criminal culpability and the proportionality of punishment.

*Id.* at 3. Moreover, detention of juveniles "can actually increase recidivism [and] pull youth deeper into the justice system." *Id.* at 9. With the recognition that "[a]dolescents are not simply young adults," the Council has endorsed "a different approach" toward the administration of juvenile justice "that recognizes both [juveniles'] reduced culpability and their capacity for rehabilitation and growth." *Id.* at 4.

### B. Analysis of the Trial Court's Rationale for Detaining K.G.

The trial court ruled that K.G. should be detained because the government had carried its burden under D.C. Code § 16-2310 (a) to rebut the presumption against detention of a juvenile prior to a factfinding or dispositional hearing. It is undisputed that because the trial court issued another interim order of detention (in

lieu of proceeding with K.G.'s dispositional hearing pursuant to D.C. Code § 16-2320), its detention decision had to be authorized under D.C. Code § 16-2310. The only question is whether the evidence supported the court's decision under D.C. Code § 16-2310 (a)(1) that K.G.'s detention was "required . . . to protect the person or property of others from significant harm."[26]  Reviewing the sufficiency of the evidence and the embedded statutory interpretation issues de novo,[27] we determine that the record does not support a conclusion that K.G. should be detained.

We begin our analysis, as we must, with the plain language of D.C. Code § 16-2310 (a).  *Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753 (D.C. 1983) (en banc).  The language of § 16-2310 (a) authorizing detention if it is "required to protect the person or property of others from significant harm" has only "superficial clarity."  *Id.* at 754.  It plainly conveys a goal of promoting public safety but provides little guidance as to the limits of a trial court's detention authority.  *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("A word in a statute may or may not extend to the outer limits of its definitional possibilities.").  In particular, it does not define the source or type of "significant harm" that would

---

[26]  D.C. Code § 16-2310 (a)(2) alternatively authorizes detention "to secure a child's presence at the next court hearing."  No concerns were ever raised in this case about the need to ensure K.G.'s appearance in court.

[27]  *Campbell v. United States*, 163 A.3d 790, 794 (D.C. 2017).

render detention "required." Thus we look beyond the text of this phrase and place it in the context of the statute as a whole, its legislative history, and its animating purpose. *See Washington v. District of Columbia,* 137 A.3d 170, 174 (D.C. 2016) ("in expounding a statute, we must . . . look to the provisions of the whole law, and to its object and policy"); *District of Columbia v. Place*, 892 A.2d 1108, 1111 (D.C. 2006) ("Statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."); *Hively v. District of Columbia Dep't of Emp't Servs.*, 681 A.2d 1158, 1161 (D.C. 1996) ("Ambiguous [statutory] provisions are to be 'construed with reference to the statute's manifest purpose.'").

Considering these factors, we interpret D.C. Code § 16-2310 (a) to require proof that a juvenile's *particular* behavior could cause *direct,* "significant harm" to "the person or property" of a particular individual (or individuals). We ground our analysis in the legislative purpose to minimize the detention of children, see *supra* II.A., and the statutory mandate that a child "shall not" be placed in detention "unless" there is "information" that satisfies the strictures of the statute; we also contrast section (a) with section (a-1), which authorizes a presumption and thus to some extent relieves the government from having to make a case-specific showing

that detention is required.[28] We further rely on the statutory directive that the particular "information" presented by the government be proof that detention—again, generally disfavored for juveniles—is "required" to advance the public safety goal of the statute. As discussed, proof that a juvenile has committed an offense with a firearm—a weapon that can cause direct, physical "significant harm"—is sufficient information to justify a presumption of detention. We conclude that other case-specific information that similarly demonstrates that an individual juvenile (albeit without a firearm) presents a threat of direct, "significant" harm to the person or property of others is necessary to satisfy the strictures of § 16-2310 (a) and ensures that detention is used only as a last resort.[29]

Applying this standard to this case, reversal of the detention decision was compelled. No particularized evidence of direct harm to the person or property of others—or potential for such harm—was presented. The government did not present any evidence as to the particulars of K.G.'s alleged new drug activity in the

---

[28] *Cf. Blackson v. United States*, 897 A.2d 187, 194-95 (D.C. 2006) (acknowledging that the government bears the burden of proof in adult detention proceedings).

[29] What quantum of harm amounts to "significant harm" under D.C. Code § 16-2310 (a) is another question, but we do not address it in this case because we conclude that the government failed to establish that K.G. engaged in or posed a serious risk of the kind of harm—direct, physical harm—envisioned by the juvenile detention statute. See *infra*.

adult case. The *Gerstein*[30] affidavit from his arrest indicates only that he was selling drugs to consenting adults in a public park. Thus, there is no indication in the record, for example, that K.G. was armed, that he threatened anyone with physical harm, or that he actually engaged in any behavior that might cause direct harm to the person or property of others.

To reach its conclusion that K.G. should be detained, the trial court relied on K.G.'s rearrest as an adult on "dangerous" drug charges. The court also relied on K.G.'s recidivism while on supervision and failure to comply with some of his conditions of release. None of these considerations supported K.G.'s detention under D.C. Code § 16-2310 (a).

The fact that K.G. faced new charges in adult court for drug crimes which are categorized as "dangerous" under the adult detention statute did not itself justify K.G.'s detention under the juvenile detention statute. A term of art, "dangerous crimes" is defined in D.C. Code § 23-1331 (3) to include a range of offenses—some that may cause direct physical harm to others (e.g., some gun offenses, arson, robbery) and others that may not (e.g., prostitution, pandering, attempted burglary). This definition is limited to adult detention decisions, D.C.

---

[30] *See Gerstein v. Pugh*, 420 U.S. 103 (1975).

Code § 23-1331 (3) (defining dangerous crime "as used in this subchapter"); D.C. Code § 23-1322 (c) (employing definition of "dangerous crime" under § 23-1331 (3) in its rebuttable presumption authorizing detention of adults). While the juvenile detention statute borrows in part the meaning of "dangerous crimes" and "crimes of violence" in § 23-1331, it does so selectively, and it expressly excludes a number of crimes that are so categorized under the adult statute, including felony controlled substance offenses under Chapter 9 of Title 48. D.C. Code § 16-2310 (a-1).[31] In light of the desire to treat juvenile detention decisions differently, the designation of drug crimes as dangerous in the adult detention scheme is not controlling under the juvenile detention statute.

The fact that selling drugs (here cocaine) may be considered in a colloquial sense "dangerous" to our society is irrelevant for the purposes of the juvenile detention statute. The illegal sale and consumption of controlled substances undoubtedly has adverse societal effects; as a result of drug abuse and addiction, people may lose their jobs, their homes, their families, and even their lives. But to the extent our juvenile justice system is focused on these larger issues, it seeks to break children out of cycles of anti-social behavior, not to punish or hold them

---

[31] Also excluded are arson, burglary, prostitution, and pandering. D.C. Code § 16-2310 (a-1)(2).

accountable for contributing to a problem that they did not create. Under § 16-2310, pre-disposition detention is not a tool for teaching kids a lesson. Rather, as explained above, it has a limited public safety purpose which compels a showing that a juvenile's particular behavior could cause direct, "significant harm" to "the person or property" of a particular individual (or individuals)—not merely generalized harm to the District community at large.

Moreover, the fact that this was K.G.'s second arrest for selling drugs, incurred while he was on release in his juvenile case, does not justify a detention decision under § 16-2310. This is a basis for presumptive detention of adults under D.C. Code § 23-1322 (c), but it is not a basis for presumptive detention of juveniles under § 16-2310 (a-1). Given that a child's recidivism while he has another delinquency case pending does not create a presumption of detention, it cannot by itself justify his detention when the government bears the burden of proof. Without a particularized showing that the child is engaged in conduct that could cause direct, physical "significant harm" to someone else's person or property, it is not an authorized basis for detaining the child prior to final disposition.

Finally, K.G.'s violation of some of his conditions of release did not justify his detention. The trial court correctly acknowledged that, on their own, K.G.'s noncompliance with his curfew, his failure to enroll in drug treatment, and his failure to complete computer training did not justify his detention under § 16-2310, but concluded that these violations in conjunction with his rearrest for selling drugs did provide an adequate foundation for detention under the statute. We cannot agree. If neither K.G.'s technical violations nor his rearrest individually constituted conduct that could cause direct, "significant harm" to someone else's person or property, their combination likewise could not. Instead, K.G.'s failure to comply with some of the conditions of his release, like K.G.'s rearrest, established only that he was in need of enhanced care and supervision while on release and at most justified his placement in shelter care.[32]

Because the evidence on which the trial court relied was insufficient under the statute to support a decision to detain K.G. prior to his dispositional hearing, we reversed the detention order.

---

[32] Counsel for K.G. did not object to him being placed in shelter care, and in our remand order we directed K.G. to be placed in shelter care. *See* Appendix.

### III.    K.G.'s Entitlement To Pursue an Emergency Appeal Under D.C. Code § 16-2328

Before we conclude, we address the OAG's procedural argument that K.G. should not have been permitted to pursue an emergency interlocutory appeal and only had a right to an expedited appeal.  The OAG argues that D.C. Code § 16-2328—which authorizes juveniles who are detained or placed in shelter care to pursue an appeal in this court and obtain a decision from us within a week of a trial court's order[33]—"only applies where a juvenile 'has been ordered transferred for criminal prosecution under § 16-2307 or detained or placed in shelter care or subject to conditions of release under § 16-2312,'" neither of which, the OAG argues, is the situation in K.G.'s case.  It is undisputed that K.G. has not been ordered to be tried as an adult under D.C. Code § 16-2307 (2013 Repl.); we conclude, however, that he was detained "under D.C. Code § 16-2312," and thus that he may pursue an emergency appeal under § 16-2328.

---

[33]    If the juvenile files a timely notice of appeal (within two days of the date of entry of the trial court's order), this court must then hear the appeal within three days (excluding Sundays) of that filing, and we must render a decision "on or before the next day" following argument.  D.C. Code § 16-2328 (a)-(b).  In this case, K.G. filed his notice of appeal on Thursday, October 5, 2017; this court heard oral argument on Saturday, October 7, 2017; and we issued an order reversing and remanding on Sunday, October 8, 2017.  *See* Appendix.

The OAG argues that § 16-2312 "governs an initial, pre-trial detention order, not a post-trial detention order," alluding to the fact that K.G. had already pled involved to one count of possession of cocaine. But § 16-2312 does not limit the procedures it sets forth for making detention and shelter care decisions to initial pre-trial detention orders. Nor does it make sense to read into the statute such a limitation. Section 16-2312 is the only statutory provision that authorizes a trial court to "order detention or shelter care . . . if [either] is required under the criteria in [§] 16-2310." D.C. Code § 16-2312 (d)(1)(A). As noted above, the reach of D.C. Code § 16-2310 applies to all detention decisions made before either a factfinding or a dispositional hearing, i.e. before final adjudication of the juvenile. If the OAG were correct, juveniles like K.G.—to whom the OAG concedes the strictures of § 16-2310 apply—would have none of the procedural rights provided in § 16-2312 to ensure that they were properly detained or placed in shelter care pursuant to § 16-2310: they would have no statutory right to notice or an opportunity to be heard, no right to counsel, and no right to a written decision explaining the reasons for the court's decision detaining them or placing them in shelter care. *See* D.C. Code § 16-2312 (b)-(d). We can conceive of no reason the Council would have intended such a result, particularly in light of (1) its manifest desire to limit the circumstances in which detention orders may issue and to keep children with their families in the community whenever possible, see *supra* II.A.,

and (2) its commitment to ensuring that juveniles receive due process.[34]  *See* D.C. Code § 16-2301.02 (1).

In the absence of any language limiting § 16-2312 to initial pre-trial detention hearings, the OAG cites to provisions of the statute—subsections (e) and (f), requiring an assessment of probable cause to believe the allegations in the delinquency petition are true before ordering detention or shelter care.  The OAG argues that, because these subsections only make sense in the context of pre-factfinding detention decisions, we must read the whole of § 16-2312 to apply only to pre-factfinding detention decisions.  We are unpersuaded by the OAG's logic.  These subsections of § 16-2312 establish that, even after satisfying the strictures of D.C. Code § 16-2310, the District needs, at the very least, probable cause to restrict a child's liberty and place him in juvenile detention.[35]  But the fact that there may be *more* than the requisite minimum probable cause—for example, as in this case,

---

[34]  The District did not object to the hearing K.G. received prior to being detained, which satisfied all the procedural requirements of D.C. Code § 16-2312.

[35]  D.C. Code § 16-2312 (e) provides that "[w]hen a judge finds that a child's detention or shelter care is required under the criteria of section 16-2310, he shall *then* hear evidence  . . . to determine whether there is probable cause to believe the allegations in the petition are true." (emphasis added).  *See also* D.C. Code § 16-2312 (f) (providing that "[w]hen a judge finds there is probable cause to believe the allegations in the petition are true, he shall order the child to be placed or continued in detention or shelter care and set forth [h]is reasons.").

a plea of involvement—thereby obviating a finding of probable cause under § 16-2312 (e)-(f), does not obviate the other procedural protections of § 16-2312 (b)-(d). For the reasons discussed above, these provisions are still critical and have independent force.[36]

"[O]ur task is to search for an interpretation that makes sense of the statute as a whole." *District of Columbia v. Reid*, 104 A.3d 859, 868 (D.C. 2014); *see, e.g.*, *In re T.G.T.*, 515 A.2d 1086, 1088 (D.C. 1986) (reading D.C. Code § 16-2312 as a whole in assessing whether it permitted a delinquency petition to be filed within 5 days of a detention hearing upon a showing of good cause). We conclude that the procedures for detention and shelter care hearings set forth in § 16-2312 can only sensibly be read to apply to the same range of detention and shelter care decisions—i.e., decisions made before factfinding *and* dispositional hearings—that are governed by the criteria set forth in § 16-2310. Accordingly, because K.G. was

---

[36] In support of its argument that § 16-2328 only applies to initial pre-trial detention orders, the OAG also relies on this court's statement in *In re K.H.*, 647 A.2d 61 (D.C. 1994), that the "expedited appeal procedure applies to an original detention order under D.C. Code § 16-2312." *Id.* at 62. The rest of that sentence, however, makes plain that we were distinguishing between the "original" order that directed the juvenile to be detained and "subsequent orders denying reconsideration of the detention order." *Id.* Here, we are presented with "an original order of detention." *Id.*

detained under § 16-2312, he was entitled to pursue an emergency appeal to this court under § 16-2328.

## IV. Conclusion

For the reasons set forth above, we have granted K.G.'s motion for summary reversal and vacated the trial court's detention decision.

*So ordered.*

# APPENDIX

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-FS-1106

IN RE K.G., APPELLANT.                                                2017 DEL 440

BEFORE: Beckwith and Easterly, Associate Judges, and Ruiz, Senior Judge.

## JUDGMENT

On consideration of appellant's notice of appeal and motion for summary reversal wherein he seeks interlocutory review pursuant to D.C. Code § 16-2328 (a) & (b) (2012 Repl.); appellee the District of Columbia's opposition and cross-motion for summary affirmance; the trial court's October 3, 2017, order; and the October 7, 2017, argument on appeal before this court; it is

ORDERED that, construing appellee's opposition in part as a motion to dismiss appellant's interlocutory appeal, the motion is denied. This court has jurisdiction over this interlocutory appeal pursuant to D.C. Code § 16-2328. It is

FURTHER ORDERED that appellant's motion for summary reversal is granted and the trial court's October 3, 2017, detention order directing the Department of Youth Rehabilitation Services to place K.G. at the Youth Services Center (YSC) (which was reaffirmed by the trial court's October 6, 2017, order denying appellant's motion for reconsideration) is hereby vacated. The evidence presented by appellee and findings of the court are insufficient to establish that "detention [at YSC] is required" to "protect the person or property of others from significant harm." D.C. Code § 16-2310 (a) (1) (2012 Repl.). It is

FURTHER ORDERED that appellee's motion for summary affirmance is denied.

It is FURTHER ORDERED that the trial court shall, no later than 5:00 p.m. of the date of this order, enter an order transferring K.G. to a youth shelter house.

This court will issue an opinion in due course.

ENTERED BY DIRECTION OF THE COURT:
JULIO A. CASTILLO
Clerk of the Court

Dated: October 8, 2017