*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 16-FS-1289 & 16-FS-1290

IN RE N.H.M., APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(DEL-774-14 & DEL-80-16)

(Hon. Jennifer M. Anderson, Trial Judge)

(Argued May 24, 2018               Decided February 6, 2020)

*Christopher A. Eiswerth*, with whom *Penelope J. Spain*, *Virginia A. Seitz*, and *Edward R. McNicholas* were on the brief, for appellant.

*Nadia Natasha Seeratan*, *Jeffrey M. Harris*, *Michael D. Lieberman*, and *Matthew D. Rowen* were on the brief for *amicus curiae*, National Juvenile Defender Center, in support of appellant.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, and *Loren L. AliKhan*, Acting Solicitor General at the time the brief was filed, were on the brief, for the District of Columbia, *amicus curiae*.[1]

Before GLICKMAN, THOMPSON, and EASTERLY, *Associate Judges*.

_____

[1] This court invited the Office of the Attorney General to file an amicus brief after N.H.M. filed this appeal without opposition.

EASTERLY, *Associate Judge*: At issue in these appeals is the trial court's order appointing counsel for N.H.M. under the Criminal Justice Act ("CJA"), D.C. Code § 11-2601 to -2608 (2012 Repl.), but limiting the scope of counsel's paid representation. Specifically, the trial court determined that counsel could not be compensated for representing N.H.M. in any proceedings before the Department of Youth Rehabilitation Services ("DYRS"). The question presented—which is reviewable under the collateral order doctrine—is whether the trial court's order is consistent with the CJA statute, specifically as to two types of DYRS hearings: Team Decision Making Meetings and Community Status Review Hearings. To the extent the trial court ruled that counsel for N.H.M. could not be paid for representing him in these hearings, we conclude the trial court erred.

## I. Procedural History

N.H.M. was arrested for simple assault[2] in 2014, when he was fifteen years old. He qualified for court-appointed counsel, and, pursuant to the CJA, a judge in the Family Division of Superior Court appointed Aminata Ipyana to represent him. After he pled involved to the charged delinquent act in 2015, the court ordered him

---

[2] D.C. Code § 22-404(a)(1) (2012 Repl.)

to complete a diversion program.[3] But after another arrest and plea of involvement in 2016, the court ordered him restrictively committed to DYRS until the age of twenty-one.

Thereafter, Ms. Ipyana moved to withdraw, and another member of the court's CJA panel,[4] Penelope Spain, co-founder of Open City Advocates,[5] asked the court to appoint her to represent N.H.M. for the duration of his commitment. At a hearing on September 28, 2016, the attorneys and the trial court discussed the scope of Ms. Spain's appointment and attendant compensation. Ms. Spain informed the court it was her understanding that, in her representation of children post-disposition, the CJA payment structure covered "DYRS hearings and formal

---

[3] Unlike an adult who may be found guilty of a crime, a "child" may be found "involved" in a "delinquent act." D.C. Code § 16-2301(7) (2012 Repl.); *see generally* Council for Court Excellence, Guide to the D.C. Juvenile Justice System (2009). "Child" is defined to include individuals like N.H.M. who are alleged to have committed qualifying delinquent acts before age eighteen. D.C. Code § 16-2301(3), (6). The Family Division of the Superior Court is responsible for adjudicating delinquency proceedings. D.C. Code § 16-2301(1).

[4] The CJA panel consists of attorneys preapproved by the Superior Court to represent indigent persons charged with crimes; there is a panel of attorneys specifically approved to represent juveniles. *See* D.C. Code § 11-2601; Super. Ct. Admin. Order 18–04.

[5] Open City Advocates is a nonprofit organization that employs staff attorneys to provide direct representation to children and to supervise law student volunteers who mentor young people involved in the juvenile justice system. *See* Open City Advocates, https://www.opencityadvocates.org/ https://perma.cc/2A4S-BKSW.

meetings and follow up commitment hearings." She further stated that she did not intend to bill for other work done for N.H.M. by Open City Advocates and its law student volunteer mentors.

The court subsequently issued an order on October 27, 2016, in which it granted Ms. Ipyana's motion to withdraw and appointed Ms. Spain to represent N.H.M. In that order, the court distinguished between Ms. Spain and Open City Advocates, and between work done before DYRS and work done in court. The court "confirmed that it would be unable to compensate Open City Advocates under the [CJA] insofar as it might represent the [N.H.M.] in any proceedings before DYRS," but explained that Open City Advocates could represent N.H.M. "on a *pro bono* basis" at such proceedings. As for Ms. Spain, the court stated that, "[t]o the extent that there may be future Reviews of Commitment before the court, Ms. Spain . . . may be compensated by the court." The court did not clearly state, however, whether Ms. Spain could be paid for any work done before DYRS. N.H.M., through Ms. Spain, moved for "clarification" of her appointment order, specifically asking whether she could seek compensation "for her direct legal representation of [N.H.M.] in this matter throughout [his] commitment to [DYRS]." The court then issued an order on November 17, 2016, in which it ruled that "[a]ny legal representation of the respondent before DYRS, or otherwise

outside of the context of Reviews of Commitment before the court, is not compensable under the [CJA]."[6]  This appeal followed.

## II.  Timeliness and Appealability

### A.  Timeliness

The government argues that (1) the Notice of Appeal filed on December 16, 2016, is untimely as to the October 27, 2016, order, and (2) the November 17, 2016, order is neither the result of a tolling motion, nor independently appealable. We disagree with the government's premise that the dispositive substantive order regarding the subject of this appeal—the scope of Ms. Spain's paid representation—is the October 27, 2016, order.  In that order appointing Ms. Spain to represent N.H.M., the court concluded that her organization, Open City Advocates, could not be compensated for work done before DYRS and Ms. Spain could be compensated for her work before the court.  But the court did not clearly decide until November 17, 2016, that Ms. Spain could not be compensated for her

---

[6]  The court did not understand the motion for clarification to be in the nature of a motion for reconsideration of the October 27, 2016, order, but rather as a new motion "request[ing] compensation for a wider range of services."

representation of N.H.M. in any DYRS proceedings. Regardless of its label as a "clarification" of the October 27, 2016, order,[7] the November 17, 2016, order is the dispositive substantive order in this appeal, and it started the thirty-day appellate clock under our rules. D.C. App. R. 4.[8] Calculating from the November 17, 2016, order, we conclude that the December 16, 2016, Notice of Appeal was timely filed.

### B.     Appealability

This court's jurisdiction is defined by statute and is generally limited to the review of final judgments and orders. *See* D.C. Code § 11-721(a)–(b). A final order is one that "disposes of the whole case on its merits so that the court has nothing remaining to do but execute the judgment or decree already rendered." *Heard v. Johnson*, 810 A.2d 871, 876 (D.C. 2002) (internal quotation marks omitted); *accord In re Estate of Chuong*, 623 A.2d 1154, 1157 (D.C. 1993) (en

---

[7] The court's characterization of the November order as a ruling on a new request, see *supra* note 6, likewise supports this conclusion.

[8] We need not decide which rules should apply—criminal (because this is a delinquency case), *see District of Columbia v. M.A.C.*, 328 A.2d 375, 376 (D.C. 1974), or civil (because the collateral order being appealed is civil in nature), *see id.* (explaining that "the nature of the issue to be litigated and not the overall nature of the cause of action" determines which rules apply). Under either D.C. App. R. 4(a) (governing civil appeals) or D.C. App. R. 4(b) (governing criminal appeals), the timeframe to appeal is "within 30 days after the entry of the judgment or order from which the appeal is taken."

banc) (explaining that "[t]o be reviewable, a judgment or decree must not only be final but also complete, that is, final not only as to all parties, but as to the whole subject matter and all the causes of action involved" (internal quotation marks omitted)). Ms. Spain concedes that the trial court's ruling regarding the scope of her paid representation is not a final order and is reviewable by this court only if it falls under the collateral order doctrine.

The collateral order doctrine is "a narrow but well-recognized exception to the rule against appeals from non-final orders." *In re Estate of Chuong*, 623 A.2d at 1157 (internal quotation marks omitted). It requires a showing that the order in question (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue . . . separate from the merits" of the case, and (3) is "effectively unreviewable on appeal from a final judgment." *Id*. There is no dispute that the order in this case satisfies the first two prongs of the collateral order doctrine. We conclude that the trial court's order is effectively unreviewable because there is no other point in time in the juvenile's case when the trial court might revisit this decision in a final order that could then be appealed to this court.

The government argues that, if N.H.M. is "dissatisfied with the services he is receiving or his level of placement, he may petition the Superior Court to modify

its dispositional order[,] D.C. Code § 16-2323(h)[,]'" and that at such a proceeding there is "no reason that the question of counsel's involvement in accordance with these statutory provisions cannot be raised and decided." But a theoretical opportunity to have an argument be considered again in a trial court is not the type of opportunity for later review that bars application of the collateral order doctrine. Reviewability under the collateral order doctrine turns on whether a litigant has a later opportunity to come before this court to obtain *appellate* review of a claim previously conclusively determined by the trial court.[9] We see no later opportunity to seek this court's review of the scope of Ms. Spain's paid representation. That issue was decided at the outset of and in conjunction with Ms. Spain's appointment. And having been decided, the avenue to revisit the decision is this appeal, rather than an attempt to relitigate the issue at a later review hearing, before the trial court, concerning the separate question of the child's disposition.

Federal courts have likewise held that orders defining the scope of paid representation are reviewable under the collateral order doctrine. *See Clark v.*

---

[9] The government also suggests that the court's ruling about the scope of Ms. Spain's paid appointment will not evade review because N.H.M. has a right to administratively appeal certain decisions by DYRS. *See, e.g.*, 29 DCMR § 1211.7 (2020). But any review of the agency's decisionmaking would not afford a forum to revisit, much less overturn, the trial court's order.

*Johnson*, 278 F.3d 459, 460–61 (5th Cir. 2002) (holding that an order denying a motion by appointed counsel in a federal habeas proceeding to expand the authorized scope of her representation to include state clemency proceedings not specified in the CJA was reviewable under the collateral order doctrine), *abrogated on other grounds by Harbison v. Bell*, 556 U.S. 180 (2009); *cf. Harbison v. Bell*, 556 U.S. 180, 182–83 (2009) (holding that a Certificate of Appealability in a federal habeas proceeding was not required for appeal of order denying a motion to expand the authorized scope of paid representation under the CJA because the order was "appealable" despite not being a "final order[] that dispos[ed] of the merits of a . . . proceeding"). The government cites a different line of cases holding that particular CJA fee determinations are not appealable and are instead properly addressed in administrative proceedings.[10] But its reliance on these cases is misplaced because we are not reviewing an order determining how much Ms. Spain should be paid for representing N.H.M. before DYRS, but rather an order ruling that she categorically may not seek payment for these services.[11]

---

[10] *See, e.g.*, *In re Carlyle*, 644 F.3d 694, 698–99 (8th Cir. 2011); *United States v. French*, 556 F.3d 1091, 1093 (10th Cir. 2009).

[11] We disagree with the government's argument that because Ms. Spain has yet to bill for particular services—having been ordered not to do so—she is seeking an "advisory opinion."

We also reject the government's suggestion that we should not deem the trial court's order reviewable under the collateral order doctrine because Ms. Spain

(continued…)

We conclude that the court's order denying paid compensation for work done before DYRS is effectively unreviewable at a later point in time, and thus we review it now.

### III. Analysis

N.H.M. argues that two types of hearings before DYRS qualify for paid representation under the CJA: Team Decision Making Meetings and Community Status Review Hearings. We review this question of statutory interpretation de novo. *In re K.G.*, 178 A.3d 1213, 1219 (D.C. 2018).

The CJA provides a robust right to counsel to any "juvenile [who is] alleged to be delinquent" and who is "financially unable to obtain adequate representation"

---

(…continued)
could go to the D.C. Council and seek to amend the CJA to ensure that children receive paid representation in DYRS proceedings. This argument goes to the merits, not the appealability, of the trial court's order. And as N.H.M. correctly observes, "[l]obbying the legislature is always an option for litigants. Were that sufficient to deny review, the collateral order doctrine would not exist."

in the District of Columbia.[12] D.C. Code § 11-2601(5); *see also* D.C. Code § 16-2304(a). The District ensures qualified counsel are available by appropriating funds to pay the members of the CJA panel who receive court appointments. *See* D.C. Code § 16-2304(d) (authorizing the appropriation of funds); Joint Comm. on Judicial Admin., Plan for Furnishing Representation to Indigents Under the District of Columbia Criminal Justice Act § II.D (2016) [hereinafter CJA Plan] (scheme for compensation); Super. Ct. Admin. Order 09-06, at 1 (fee schedule for juvenile representation under the CJA).

The scope of court-appointed, paid representation extends to "every stage of the proceedings from [the qualifying] person's initial appearance before the court through appeals, *including ancillary matters appropriate to the proceedings*." D.C. Code § 11-2603 (emphasis added). In particular, "[a] child alleged to be delinquent . . . is entitled to be represented by counsel *at all critical stages of*

---

[12] The Sixth Amendment guarantees a right to counsel, U.S. Const. amend. VI, and supersedes any lesser statutory right. Because the challenge to the court's order regarding the scope of counsel's paid representation prevails under the CJA, we resolve this case solely on statutory grounds. *See Olevsky v. District of Columbia*, 548 A.2d 78, 81 (D.C. 1988) (acknowledging that "[t]his court . . . generally declines to decide a question on constitutional grounds if it may be satisfactorily resolved on a statutory basis which avoids the constitutional issue" and relying on this practice to resolve a right to counsel claim based on the CJA, instead of the Sixth Amendment).

*[Family] Division proceedings*, including the time of admission or denial of allegations in the petition and all subsequent stages." D.C. Code § 16-2304(a) (emphasis added). Read together, these provisions provide children the right to compensated appointed counsel at "all critical stages of [Family] Division proceedings" and "all ancillary matters appropriate to [those] proceedings."

When Congress first codified a child's right to counsel at "all critical stages of Family Division proceedings" in 1970,[13] it chose to "define[] what is a critical stage only insofar as it is necessary to insure that the right exists at least as early as the time a child admits or denies the allegations in the petition"—purposefully "cast[ing] [the statute] in terms which will absorb future court decisions without necessitating statutory change." S. Rep. No. 91-620, at 16 (1969). The Council has since significantly amended Title 16, which now affords post-disposition judicial review of a committed child's placement and services.[14] *See* D.C. Code § 16-2323(h). As the government acknowledges, the trial court ruled that Ms. Spain was entitled to be paid for representing N.H.M. in "post-disposition commitment review hearings," thus effectively determining that these proceedings

---

[13] *See* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 121(a), 84 Stat. 473, 526.

[14] Omnibus Juvenile Justice Act of 2004, D.C. Law 15-261, § 802; 52 D.C. Reg. 1188.

are critical stages of a child's case.[15]  The government does not contest this aspect of the court's ruling.

We thus must determine whether Team Decision Making Meetings and Community Status Review Hearings are "ancillary" to D.C. Code § 16-2323(h) judicial reviews.  The term "ancillary" is not defined in the CJA statute, but in the context of discerning the scope of the court's jurisdiction, "[a]ncillary matters" are "broadly" understood to be "matters auxiliary, accessorial or subordinate to the main matter" with "[t]he overriding concern . . . [being] to insure that complete justice may be done." *Morrow v. District of Columbia*, 417 F.2d 728, 740 (D.C. Cir. 1969) (internal citation and quotation marks omitted).  We see no reason to depart from this understanding in the CJA context.  Addressing each of these agency hearings in turn, we conclude that they are both "ancillary" within the meaning of D.C. Code § 11-2603.

---

[15]  This is recognized in Super. Ct. Juv. R. 44(a)(1), which expressly provides that in delinquency cases "the respondent shall be represented by counsel at all judicial hearings including . . . hearings for the review of a dispositional order," and that "counsel shall be appointed" if counsel is not or will not be retained.

When a child is adjudicated delinquent, the court may commit the child to the custody of DYRS pursuant to D.C. Code § 16-2320(c)(2) (2017 Supp.), at which point the agency assumes control over the child's placement (in a secure facility or in the community) and the services the child receives. *See* 29 DCMR § 1200 (2020). The agency is statutorily obligated to periodically review the child's rehabilitative progress at what are currently called Team Decision Making Meetings, where the participants consider whether the services and placement currently provided have been effective and decide what further steps should be taken to ensure the child's rehabilitation and welfare. D.C. Code § 16-2323(g); *Team Decision Making Meetings*, D.C. Dep't of Youth Rehabilitation Services, https://dyrs.dc.gov/page/team-decision-making-meetings. "[T]he child's attorney" is expected to attend and participate. D.C. Code § 16-2323(g). Court review is available pursuant to D.C. Code § 16-2323(h) if there is a concern by the child (or the child's parent or guardian) that the child is "not receiving appropriate services or level of placement." The child may file a petition with the court to modify a dispositional order,[16] D.C. Code § 16-2323(h)(1), and:

> "[i]f the [Family] Division finds that the child is not receiving appropriate services or level of placement, the

---

[16] A child may not initiate such judicial review more than once in a six-month period. D.C. Code § 16-2323(h)(1).

> Division may specify a plan for services that will promote the rehabilitation and welfare of the child and the safety of the public, except that the Division may not specify the treatment provider or facility."

D.C. Code § 16-2323(h)(2). We conclude that DYRS Team Decision Making Meetings held pursuant to § 16-2323(g) are ancillary to post-disposition judicial hearings held pursuant to § 16-2323(h) because these agency proceedings clearly envision representation by counsel and are subject to court review at which there is a conceded right to paid representation. Thus Team Decision Making Meetings are agency proceedings at which paid representation must be provided under the CJA.

Community Status Review Hearings occur if a child is committed to DYRS and placed in the community but then violates their conditions of release such that revocation is considered. *See* 29 DCMR §§ 1202 to -06. Unlike Team Decision Making Meetings, Community Status Review Hearings are not expressly contemplated by D.C. Code § 16-2323, but the nature of these hearings makes the presence of counsel both necessary and expected, and these hearings too may lead to court review under D.C. Code § 16-2323(h). A Community Status Review Hearing is an adversarial-type proceeding, at which the child's violations must be proved by a preponderance of the evidence, and the child has a right to present witnesses, to question any witnesses, and to challenge any documents. 29 DCMR

§ 1210.11, .12, .18. Pursuant to agency regulations, the agency must provide counsel of record with notice of a Community Status Review Hearing, 29 DCMR § 1207.1; the child has a right to be represented by counsel at the hearing, 29 DCMR §§ 1207.8, 1210.5; and a child who is indigent and requests counsel is presumptively entitled to have counsel provided. 29 DCMR § 1207.9–.10. In addition to these regulations envisioning the participation of counsel at a Community Status Review Hearing, the decision to rescind a child's community release (which necessarily modifies their placement and likely modifies their services) after such a hearing is directly reviewable by a court under the same procedure as the decisions made in Team Decision Making Meetings, D.C. Code § 16-2323(h).[17] We conclude that Community Status Review Hearings too are

---

[17] Because representation by counsel and court review are both envisioned, a Community Status Review Hearing is akin to a probation revocation hearing that a child receives if they are under court supervision and alleged to have violated their conditions of community release—a court hearing at which they are entitled to representation by paid counsel. D.C. Code § 11-2601(3); *see also* CJA Plan, *supra*, § II(D)(2)(b)(ii); Super. Ct. Admin. Order 09-06, at 2 (fee schedule including funds specified for probation revocation proceedings in juvenile cases).

The government's observation that adult prisoners have no right to counsel under the CJA (or the constitution) at parole release hearings is a non sequitur. Children facing Community Status Review Hearings are not seeking release into the community, they are seeking to remain in the community. Nor can we analogize such hearings to adult parole revocation hearings, both because such hearings do not lead to direct court review, and relatedly, as discussed further below, because the juvenile delinquency system was created to be distinctly different from the adult criminal justice system.

ancillary to a critical stage of Family Division proceedings and thus are agency proceedings at which paid representation must be provided.

We are unpersuaded by the government's argument that paid representation is not provided to children at any administrative proceedings before DYRS. The dual premises of the government's argument are flawed. First, the government asserts that the CJA by its plain language affords juveniles paid representation only at "proceedings before the Superior Court's Family Division," but it fails to acknowledge that the CJA's inclusion of coverage of ancillary matters under D.C. Code § 11-2603 applies to every "*person* for whom counsel is appointed" under § 11-2601, which includes any "juvenile . . . alleged to be delinquent." D.C. Code § 11-2601(5). Second, the government analogizes committed children to adult prisoners who have no right to paid counsel under the CJA for prison administrative proceedings conducted "post-sentencing, when they face possible 'adjustment' to their liberty, or when their liberty is 'at issue.'" But children who are deemed involved in delinquent acts and committed to DYRS custody are not like adult prisoners in fundamental respects. Indeed, our juvenile delinquency system was created to be something other than the adult criminal system—"a system that . . . treat[s] children as children, in all phases of their involvement" and to that end assures them "fair hearings"; "promote[s] youth development";

"place[s] a premium on the rehabilitation of children with the goal of creating productive citizens"; and "hold[s] the government accountable for the provision of reasonable rehabilitative services." D.C. Code § 16-2301.02(1)–(2), (5), (7); *see also In re K.G.*, 178 A.3d 1213, 1214 (D.C. 2018) (explaining that "[u]nder our juvenile delinquency system, the District of Columbia recognizes that children, because of their cognitive and emotional maturity, should not be treated like adults. This differentiation applies across the board to all decisions made in the life of a juvenile delinquency case . . . ."). An important distinction between the adult and juvenile system developed in furtherance of these goals is that the court maintains jurisdiction over the child's case for the entirety of their commitment, D.C. Code § 16-2303, to ensure they are "receiving appropriate services" and are in the appropriate "level of placement," D.C. Code § 16-2323(h). For this reason, we are unpersuaded by the government's argument that "the representation that is afforded to committed juvenile offenders [under the CJA] is . . . co-extensive with that afforded to adult prisoners." Rather, as our law assigns the court broader jurisdiction over children than adults, so too does it afford children a broader right to paid representation.

## IV.   Conclusion

For the reasons set forth above, we reverse the trial court's order and remand for further proceedings consistent with this opinion.

*So ordered.*